Case number 17-3032, Ann Watkins et al. v. Honeywell International Inc. Argument not to exceed 15 minutes per side. Mr. Wertheimer, you may proceed for the appellant. Thank you. Good morning, Your Honors. Good morning. My name is Bill Wertheimer on behalf of 950 retirees who spent their work lives at the Autolite plant in Fostoria, Ohio. I'd like to reserve three minutes for rebuttal. I'd like to focus on one fact, or actually multiple facts, but focus on one issue, and that is that our complaint pleads facts that make out a plausible claim that the parties intended lifetime benefits. Before I do, though, I would like to address the elephant in the room. To quote Judge Griffin a couple weeks ago in the denial of the en banc review in Kelsey Hayes, our post-Tackett case law is a mess. My point here is that what do we do right now? And Judge Griffin said a couple of things about that, about trying to develop consistency. Judge Gibbons, in her concurrence, talked about the fact that the cases were fact-specific. She, it may have been more aspirational, said because the facts dictated the results, the cases can be reconciled. But one point I would take away from that is the importance of the facts. What do we do going forward, given the current state of the law, however you describe it? It seems to me that what we do, or what you should do, is decide this and other cases as narrowly as you can. As you would any case, but particularly here. And that what you should not do is extend the rationale from Gallo, or the discussion in Gallo about duration clauses. And allow a case to be decided based on 12B6, on these facts. That would simply confirm what Judge White, I think in her concurrence in Reese, said that we're now turning into a circuit where the duration clause is the absolute determiner. Period. It would help me, rather than having a lot of strategy about how the court should interact with itself, if you could identify the strongest cases that are published precedents that support you and see whether they do. Yes, Your Honor. Might serve your underlying purpose of a narrow opinion. First of all, we have here pattern or industry standard language with the pension tie-in, the layoff and leave of absence provisions that this court has dealt with many, many times. Including Reese and Kelsey Hayes. So the underlying contracts have all, we have all of the contract arguments that have been made there and were made successfully in Reese and in Kelsey Hayes. Let me ask in terms of how we should frame our review here. You seem to suggest that we should apply the Yardmen case, the Yardmen analysis to our determination of contract principles here because Yardmen was in existence when the CBAs were negotiated. But I'm just unclear on how we could do that in light of the Supreme Court's decision and Gallo. Well, I don't think you apply Yardmen. Yardmen does not live. But I do think that you... I would agree with that. Everyone can agree. I thought you were making an argument that in effect we do apply it because it was the law and we have to apply the law at the time. No, not that you... You withdraw that argument? No, no. I think our argument is a little more sophisticated than that. Our argument is we take what Judge Cole said in Tackett 3 where he added two ordinary principles of contract law to the list from the majority and the concurring opinions in Tackett. And those two were that existing law is incorporated in contracts and Williston, the court cited, said that includes common law and second, that changes in the law are not incorporated unless indicated. So are you using that to refer to Yardmen or not? Well, we are using it to say that when you have a litigant, an employer like Honeywell who is negotiating in the 1970s, 80s, 90s and is agreeing to pattern language in Ohio, which has been held in Ohio to provide lifetime benefits, that that is relevant, that that is relevant evidence. Here we have Honeywell in a related case. The Third Circuit affirmed a finding that they forum shopped because they went to New Jersey to file a declaratory action because they knew what the law was in Michigan. So that's what this employer knows. All we are saying relative to the Yardmen law is that fact is a relevant fact in trying to determine the intent of the parties at the time. That is 1985, 1990, 1995. Do you even get to the intent of the parties if the contract is unambiguous? Well, arguably you always get to the intent of the parties. Even if the contract is unambiguous, we examine evidence relevant? If it is totally unambiguous, but let me back to Judge Rogers' point. If the contract is totally unambiguous, we don't consider other evidence of the intent. If it's totally unambiguous, but I would cite the Seventh Circuit law that we cited in our briefs. Bidlack on Bonk where Judge Posner talked about latent and patent ambiguities and then in Rossetto applied latent and patent ambiguities in a retiree benefits case. One of the differences in this collective bargaining agreement that's different from Kelsey Hayes in some of the cases which I thought were identical but were decided differently, and that's why I tried to unbonk Kelsey Hayes. This collective bargaining agreement has a clause that I did not see before and I think it is unique. It says, the insurance program shall be that which is attached hereto for the duration of the agreement which continued in force in effect until 1159, October 31, 2011. So it actually has a specific date for the termination of the insurance program and not just a general duration clause, but actually has a date. I mean, isn't this a little different than those other cases? I don't think so. It's still the equivalent of a general duration clause. Even though it's got a specific date that the insurance program terminates on this date? Well, there's a termination clause in the insurance program. It's the forward insurance program. They all contain termination clauses, but this court has many, many times held that it's still a general duration clause. It happens to be in a separate document because these big free contracts got so huge that you had pension plans, insurance programs, et cetera. That's the reason for that duration clause. Now, the specific language you're talking about, I don't know what the reason is for putting that language in, but if it was put in in 09, it probably relates to what was going on relative to the cap because they did start negotiating non-Big Three language when they started negotiating an individual cap in around 2000. But I don't think you can take that language from 2009 and say, aha, these parties intended something that all of the other parties who entered into these very similar contracts intended. Let me get back to the latent patent ambiguity to just apply it here. If, and back to the point Judge Cole made in Tackett 3, the existence of that law out there, that these words meant this at this time, is, I would argue, comes under a latent ambiguity. It is something, to quote Judge Posner, which makes you scratch your head. Isn't this relevant? Are we to determine this case as if the parties negotiated post-Tackett and agreed to particular language and not when the law was different? Let me also, if I could, get to the complaint and what we allege there. In Gallo, the majority opinion relied in part on a reservation of rights clause. Not only is there no reservation of rights clause here, the parties, Honeywell, the only provision it sought to change from the Big Three contract with the normal language was it sent out a reservation of rights letters to employees. When the employees got those letters, they complained to the union, the union complained to Honeywell, they withdrew it and apologized. So here, unlike Gallo, not only don't you have a reservation of rights, you have a company apologizing for daring to suggest that they have a reservation of rights. That also is a latent ambiguity. And we have patent ambiguities here that Judge Cardin... It's hard for me to see how language inconsistent with a statute creates a latent ambiguity. I'm sorry. In other words, that would just destroy the parole evidence rule. You say, well, there's some parole evidence that goes the other way, so therefore there's a latent ambiguity. That's not what you're arguing, is it, or is it? No. How is this different from that? You seem to be saying, well, there's language out there that's inconsistent with what the statute or, I'm sorry, what the contract says, so therefore the contract is ambiguous because some of the parties refer to it as saying something different. Let me talk about the... Do you have an answer to that question? I'm sorry, ask it again, Your Honor. Certainly. As I understand the parole evidence rule, if you have a contract which says X and you have evidence that the contracting parties thought it was Y, you know, they talked about it as Y, all right? That's what we would call parole evidence, evidence outside the contract as to what the contract means that's different from what the contract says. Usually the ruling contract laws, you can't hear that evidence. There's exceptions and so forth. People write books on the subject. Are you with me so far? Yes. Okay. You seem to be making an argument that because there is language of the parties outside the contract context that's inconsistent with the contract, therefore the contract is latently ambiguous. No, I'm saying... I'm asking how that could be without destroying the parole evidence rule. That's my question. Because I'm talking about actions. This is what Honeywell did. It attempted to obtain a reservation of rights. This is what Honeywell did. I'm not talking about wording. We also have patent ambiguities. We have a contract that says there's a legacy retiree medical expense. Legacy. Does that not make you think? Why are you calling it legacy? That's in the contract. And we pleaded it paragraph 17. Also in the contract, prior to 2001, those benefits were not capped. And they put that in the contract. Why not? Arguably, and that's in the contract. Arguably because that brings to mind patent ambiguity. It's in the contract. It's objective evidence. And the district court ignored it. And that's not something that Gallo dealt with at all. So you would be going beyond Gallo. Also, we have five years of performance here. Now, we had that in Gallo, but Judge Sutton justified that by saying, yeah, but they reserved rights. Well, here you can't say that. Not only didn't they reserve rights, they apologized for suggesting they had that right, and they continued the benefits for five years, also consistent with a lifetime intent. The Third Circuit in Skinner says that's evidence of lifetime. And this was before Tackett. You know, we have many pieces of latent and patent evidence that shows an ambiguity. Mr. Borkheimer, your initial time has expired. You will have your rebuttal time. Thank you very much. Good morning. May it please the Court, Wynn Allen from Kirkland & Ellis on behalf of Huntingwell. Your Honor, the district court in this case correctly held that the plain text of the CBAs did not grant lifetime health care benefits to plaintiffs as a matter of law. And I think there are a number of terms in the contract that support the district court's decision, but I think the most important is the one that Judge Griffin identified, and that's the more specific durational language that's found in Article 9, Section 27 of the CBA. In Section 27, the CBA incorporates by reference a document called the insurance program, which includes the retiree health care benefits that are at issue in this case. And Section 27 clearly states that the insurance program applies, quote, for the duration of this agreement. That is unambiguous language making clear that Huntingwell's obligation to provide retiree health care insurance did not last beyond the expiration of the contract. I hate to interrupt your start, but why doesn't the existence of the negotiation for the caps suggest that what you just said suggests they wouldn't have to negotiate, they could just impose the caps, say you're lucky to get anything. Why are you negotiating for caps if you don't have any obligation to pay what the caps would apply to? Well, I think there's a couple of reasons for that. Summarizing about why people negotiated for caps, I don't want to get into extrinsic evidence because I don't think we need to get into that because the contract is unambiguous. But when you're consistently renegotiating collective bargaining agreements that do include retiree health care benefits in them, I think it's natural to include the caps as part of that negotiation. So for years and years, the parties were agreeing to contracts that included retiree health care benefits. When Honeywell came along in the early 2000s and said we need to negotiate some caps on the amount of our contribution, I think it's natural for the parties to negotiate that as part of the natural negotiation over retiree health care benefits. But the key point is the underlying obligation lasts for only as long as the contract lasts. You're going to come back every three years and renegotiate that. The caps negotiated were for future periods, is that right? The caps were in terms of their effective date or who they applied to. What's the difference? Well, the caps were applied only for certain retirees who had retired after a certain date. And so this court has said in Cole, as the Fourth Circuit has said in its recent Barton decision, that fact doesn't create ambiguity in the face of the contract for a couple of reasons. One is because in this contract you have unambiguous language that speaks to the duration of health care benefits. The caps speak to the amount of Honeywell's obligation. The duration is addressed elsewhere in the contract in Section 27, and there's unambiguous language there. And the second point, I'd make it a little strange to negotiate caps that apply to a period after the duration expires. I don't think it's strange at all, Your Honor. Why not? I'm asking what's strange, right? A couple of reasons. We don't owe you anything for this two-year period, but we're now going to negotiate whether that amount should be capped. Sounds a little anomalous, doesn't it? A couple of reasons. One is, as this court said in Cole, Your Honor, in rejecting this exact argument, it said just because the parties negotiated caps that became effective after the date just shows that they anticipated that retiree health care might be renewed in the next contract. I'm opposing counsel's response to that by saying in Cole there was this other factor that was not present in this case. I don't think in Cole there were any factors that are not present in this case. Well, I thought there was this reservation of rights. That's not in Cole, Your Honor. That's in Gallo, I think he was talking about there. So I think Cole is on all fours with this case. Cole is on all fours. There are no material distinguishing facts between this case and Cole. The other reason is, Your Honor, as this court explained in Wood v. Detroit Diesel, there are reasons to agree to caps that have to do with the accounting rules and things that companies have to book on their accounting sheets that a cap, regardless of when the effective date is, still has a present accounting reality that companies can account for, and that's something this court has split. It might account for future payments that they expect to pay even though they don't have a legal obligation to pay them? That's correct. As this court explained in Wood v. Detroit Diesel, the accounting rules require that, and so a cap was implemented in order to address that. I want to speak briefly about the existing law argument, the argument that plaintiffs make that you should interpret these contracts in light of the yard man doctrine. I don't think that's the correct way to do that, and I think it would be inconsistent with what the Supreme Court did in Tackett. The CBAs in that case, like the CBAs here, were negotiated when yard man was still good law, and yet the Supreme Court never suggested that those CBAs should be construed under the yard man doctrine. To the contrary, when it remanded the case to this court, the Supreme Court said we're remanding for the application of ordinary principles of contract law. It didn't say we're remanding for application of yard man or the yard man inferences, so I don't think that's a correct interpretive approach to the contracts at issue here, Your Honor. A couple of other points I'd make, Your Honor. Again, I think the key fact that distinguishes this case from the number of other of this court's post-Tackett cases is the specific durational language that's in Article 9, Section 27. That's one of the key facts of this case that distinguishes it from Reese and Kelsey Hayes. I would also make the argument that in Reese and Kelsey Hayes, Your Honor, there are important facts in those cases that this court relied on to fight ambiguity that are not present here. For example, in the Kelsey Hayes case, the court relied very heavily on the fact that there was a plant closing agreement at issue in that case that specifically continued retiree health care benefits beyond the expiration of the last CBA. So you had a whole separate contract the parties had agreed to that continued benefits beyond the last CBA. That's obviously not the case here. We don't have a plant closing agreement or any other document that continues benefits beyond the expiration of the CBA. And then in Reese, Your Honor, I'd make the point that the court there found ambiguity because, quoting from the, the CBA carved out retiree health care and, quote, stated that those coverages ceased at a time different than other provisions of the CBA. It's not true in that case, in this case, Your Honor. And in fact, significantly in Reese, what the court wrote is, quote, if the CBA clearly stated that the general durational clause was intended to govern health care benefits, the CBA would most likely be unambiguous. I think that's exactly what we have in this case, Your Honor. We have an unambiguous durational clause in Article IX, Section 27, saying that the insurance agreement applies for the duration of this agreement. So even under the logic of Reese, Your Honor, I think an affirmance is warranted here. Reese and Kelsey Hayes are the only post-TACIT cases that uphold lifetime benefits? In this circuit, yes. I think also nationwide. I'm not aware of any in another circuit that upholds that.  We've got plenty of cases in this circuit. As far as I know, the state of play in the case law is there was TACIT III that was a remand down to the district court. There was the decision in Gallo v. Moen, which I think is on all fours with this case. There's the decision in Cole, which was part of the April 20th trio of cases that came out that ruled for the company in that case, found no lifetime benefits. And then there's the decisions in Reese and Kelsey Hayes. All I ask is just those two cases. Just those two cases. Other than TACIT itself. That's correct, Your Honor. A couple of more points. Just a few other points I would make, Your Honor, and I'm also happy to take any questions the panel has. Do you think we are bound by Reese and Kelsey Hayes? I think that's just what you said. Or are we bound by Gallo? I mean, if Gallo is in conflict with Reese and Kelsey Hayes, Gallo is the first decided case, the first published decision, and that would be the precedent case. But you're saying we're bound by the other two? Oh, I'm not saying that at all, Your Honor. I'm saying to the extent there is conflict between Gallo and Reese and Kelsey Hayes, you're obviously bound by Gallo. But I think you can avoid getting into those issues here, because I think affirmance is warranted under any of this Court's decisions. I think if the Court wants to, there are ways to distinguish Kelsey Hayes and Reese to not have to get into are they irreconcilably in conflict. If the Court concludes that they are, then I think under existing precedent in this Court, yes, you're bound by Gallo. That's the decision that binds the Court. And as Judge Carr held below, this case is materially indistinguishable from Gallo. Judge Carr did a nice job of walking through each of the factors this Court identified in Gallo as being important, and he said most of those apply here. And then he also walked through plaintiff's arguments and said a number of those were rejected specifically in this Court's decision in Gallo. One of the overarching themes I also wanted to make to the Court is plaintiffs in their argument here and in their briefs seem to be trying to rely on extrinsic evidence to create ambiguity in an unambiguous contract. And as this Court well knows, it's a longstanding principle of contract interpretation that extrinsic evidence is only used to resolve an ambiguity in an ambiguous contract. It cannot be used to create ambiguity in an unambiguous contract. So I think that's an easy way to dispatch with a number of plaintiff's arguments in this case because you can't use extrinsic evidence to inject ambiguity into the contract. A couple of other points, Your Honor. One is I think some of the other rationales the District Court relied on were important and also appear in Gallo and some of this other Court's post-tacket cases, such as the fact that there's express vesting language used elsewhere in the contract with respect to pension 401k benefits, and there's an absence of express vesting language with respect to retiree health care benefits. I think that's yet another fact that supports affirmance here. And, of course, both the specific and the durational clauses are the clearest and most unambiguous language in the contract that speaks directly to the issue here. Unless the panel has any more questions, I'm happy to yield the balance of my time. No, certainly not. Thank you. Thank you. Three points. First, not only does the contract specifically make reference to the fact that the pre-2001 retirees will continue to get full benefits, we haven't had discovery on that. We don't know why. So not only is that a contractual indicia that raises an ambiguity, a patent ambiguity, we don't know why. For all we know, it was agreed in bargaining. Why? Because, well, there are lifetime benefits here. Look at this Big Three language, the Big Three's lifetime. That's what the law is. What the District Court has done is cut off any opportunity for us to find that out by saying, nope, duration clause. That's wrong. We should be entitled to discovery on this. And none of these cases are 12- Only if the language is not clear. I mean, that's the standard law, isn't it, that you don't get discovery? Yes, I agree with that. So you have to argue whether it's clear or not. If you reach ambiguity, you've gone a long way, but I'm not sure you've reached it yet. Well, I agree, but, you know, to Judge Griffin's The right to discovery that you're talking about, really, the issue is whether it's ambiguous or not. Well, but- It is ambiguous. Our argument, and we've got it at paragraphs 16 and 17 of the complaint, both the pre-2001 carve-out and the reference to legacy benefits, those are in the contract. Those are at least- Those can be looked at in addition to the will continue in determining whether there's an ambiguity. And what the Seventh Circuit says is that. And therefore, you can't grant a 12b-6. It's as simple as that. And that's not in Gallo. That is not in Gallo. Nor was Gallo a 12b-6. To Judge Griffin's point about Article 9, Section 27, and I said it just sounds to me like a general duration clause, which is right. But the reason I have to leave it at that, we have not had discovery. So in this case, it would not be appropriate to cut off discovery and say, oh, here, I found a duration clause, looks a little bit different than Kelsey Hayes, so this one is clear, and they lose. We don't know why another general duration clause was put in there. I speculated, but I have to speculate because we have had no discovery. This is a 12b-6 case. Does it matter why it's put in there if it's clear and unambiguous? Well, it seems to me if it's a general duration clause, as are the clauses in all the cases that this court has already determined, that it doesn't, as a matter of law, trump on the lifetime issue. That's always been the law in this circuit. And if you're going to say, well, here's a general duration clause that's different than the general duration clause in Kelsey Hayes, it seems to me, before you say as a matter of law, that these 950 folks are out, that we should get discovery on that, find out if it means what I think it means, which is it's just another general duration clause. Counsel, your time has expired. Thank you very much. We very much appreciate it. Thank you. We very much appreciate your arguments today, both counsel. The case will be submitted. I think that completes our docket for today.